```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                  SOUTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION

GARY WAYNE SEARCY,               :

      Plaintiff,                 :

vs.                              :    CIVIL ACTION 06-0126-BH-M

GRANTT CULLIVER, et al.,         :

      Defendants.                :
```

<u>REPORT AND RECOMMENDATION</u>

Plaintiff, an Alabama prison inmate proceeding <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u> filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment (Docs. 28, 34), and Plaintiff's opposition thereto.  (Doc. 36).  For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action against Defendants be dismissed with prejudice.

<u>I.  SUMMARY OF FACTUAL ALLEGATIONS</u>

From its review of the record, the Court summarizes the parties' allegations material to the issues addressed in this Report and Recommendation as follows.  Plaintiff has been incarcerated by the Alabama Department of Corrections ("ADOC") since 1998 under a sentence of life imprisonment without the possibility of parole for capital murder.  (Doc. 4 at 5).  On March 7, 1998, Plaintiff was admitted to W.E. Donaldson

Correctional Facility ("Donaldson"), where he was housed in a single cell unit until May 2, 2001, when he was transferred to a single cell unit at St. Clair Correctional Facility ("St. Clair"). (Doc. 28, att. 2 at 1). On June 18, 2001, Plaintiff was sent to the receiving and classification center at Kilby Correctional Facility ("Kilby"),[1] where he was housed in administrative segregation until July 24, 2001, when he was transferred to administrative segregation at W.C. Holman Correctional Facility ("Holman"). (Id. at 2).

On December 27, 2001, Defendant Penny Emmons, Holman Classification Specialist, conducted a review of Plaintiff's status and continued his assignment in administrative segregation. (Id.). Plaintiff requested a transfer at that time to the State of Florida under the Interstate Corrections Compact ("ICC"). His request was denied because his sentence of life imprisonment without the possibility of parole made him ineligible for an ICC transfer. (Id.).

In February, 2002, seven months after being transferred to Holman, Plaintiff received citations for violating Rule 44, threats; Rule 29, assault on a DOC employee; Rule 52, possession

---

[1] Receiving and classification for male inmates in the ADOC system takes place at the receiving and classification center at Kilby. (Doc. 28, att. 4 at 2). Male inmates sentenced to life without parole can be housed permanently in one of three facilities: Donaldson, Holman, and St. Clair. (Id.).

of an escape device (a prison made handcuff key); and Rule 51, possession of a weapon (an ice pick). (Id.). A reclassification hearing followed resulting in an increase in Plaintiff's custody to "maximum" as per DOC classification guidelines.[2] (Id.).

One year later, on June 10, 2003, the Institutional Segregation Review Board ("ISRB") reviewed Plaintiff's custody and granted him a reduction in custody to "close," with continued confinement in administrative segregation, but with weekly reviews by the ISRB. (Id. at 3). On June 18, 2003, the ISRB reviewed Plaintiff's custody and made no changes. (Id.).

On May 22, 2004, Plaintiff was released from administrative segregation to the general population on a six-month probationary basis. (Id. at 4). Plaintiff's annual review followed the next month on June 30, 2004, with no changes. Plaintiff's request to be transferred at that time to St. Clair prison was denied because he had four documented enemies at St. Clair.[3] (Id.).

---

[2] DOC classification manual, page 44, ¶ D, items 1, 3, and 4(e), provides: "Disciplinary for/or assaultive behavior with a weapon will result in placement into maximum custody for at least twelve (12) months. . . . Possession of a weapon alone will result in a return to close custody for twelve (12) months. . . . Possession of any escape device will result in return to close custody for not less than twelve (12) months." (Doc. 28, att. 2 at 3).

[3] In November, 2003, Plaintiff submitted an "enemies list" to Defendant Emmons containing the names of nineteen inmates throughout the Alabama prison system with whom he could not safely be confined. (Doc. 28, att. 3 at 32; Doc. 28, att. 2 at

3

The following year, on June 23, 2005, another annual review of Plaintiff's custody status found Plaintiff adjusting to the general population "appropriately," and he was assigned to the "honor dorm" and the "metal fab." (<u>Id.</u>). However, three months later, on September 23, 2005, Plaintiff threw his food tray at a DOC employee and was returned to segregation. (<u>Id.</u>; Doc. 28, att. 3 at 11-12). On October 11, 2005, after a hearing, Plaintiff was found guilty of violating Rule 29, assault on a person associated with the ADOC. (<u>Id.</u>). The Hearing Officer recommended thirty-five days in disciplinary segregation, but the Warden reduced the time to ten days. (<u>Id.</u>).

The following month, on November 29, 2005, a correctional officer confiscated a prison made "sticker" and handcuff key from Plaintiff's front pocket. (Doc. 28, att. 3 at 3-4, 9). On December 2, 2005, Plaintiff was served with notice of a hearing to be conducted on December 6, 2005. (<u>Id.</u>). Plaintiff was charged with violating Rule 52, unauthorized possession of a weapon, and Rule 51, unauthorized possession of an escape device. (<u>Id.</u> at 3, 9). Plaintiff was found guilty of both charges and given forty-five days in disciplinary segregation. (<u>Id.</u> at 4,

---

3). Previously, at Donaldson, Plaintiff had compiled an "enemies list" with the names of seventeen inmates with whom he could not be safely confined. (Doc. 28, att. 3 at 23-24).

10).[4]

On January 26, 2006, Plaintiff was served with twenty-four hour advance written notice of a reclassification hearing to be held on January 30, 2006. (Doc. 28, att. 2 at 4). Plaintiff requested three witnesses, some of whom were not scheduled to work on that date. When the hearing was rescheduled for February 9, 2006, Plaintiff refused to attend. (Id.). At the hearing, Plaintiff's custody was increased to "close" in accordance with DOC Classification guidelines.[5] (Id. at 5).

Plaintiff filed the Complaint in this action on March 1, 2006. (Doc. 1). He remained in administrative segregation at Holman until April 12, 2006, when he was transferred to St. Clair prison, where he is currently incarcerated. (Doc. 8).

## II.  PROCEDURAL ASPECTS OF THE CASE

On March 1, 2006, Plaintiff filed a § 1983 Complaint arising out of his incarceration in administrative segregation at Holman prison for an aggregate period of approximately three years and five months. (Doc. 1). On March 9, 2006, the Court ordered

---

[4] On January 12, 2006, an enemy list was created between Plaintiff and inmate Kenneth Lamar Wilson arising out of the evidence presented at Plaintiff's disciplinary hearing. (Doc. 28, att. 2 at 5; Doc. 28, att. 3 at 4).

[5] DOC Classification Manual, page 41, § C, item 3, provides: "Possession of a weapon alone will result in a return to close custody for twelve (12) months." (Doc. 28, att. 2 at 5).

Plaintiff to refile his Complaint on this Court's form, which Plaintiff did on March 20, 2006.  (Docs. 3, 4).  In his Amended Complaint, Plaintiff alleged Fourteenth and Eighth Amendment claims against Defendants Grantt Culliver, Warden at Holman prison; Penny Emmons, Classification Specialist at Holman prison; and Judy Holloway, Classification Specialist Supervisor at Kilby prison,[6] arising out of his confinement in administrative segregation while incarcerated at Holman.  Plaintiff seeks nominal and punitive damages, as well as injunctive relief.[7] (Doc. 4 at 12).

On January 23, 2007, the Court directed the Clerk to serve Defendants with the Complaint.  (Doc. 15). On March 26, 2007, and April 13, 2007, Defendants filed an Answer and Special Report

---

[6] Defendant Holloway is now the Classification Specialist Supervisor at Red Eagle Honor Farm.  (Doc. 28, att. 4).

[7] Plaintiff's requests for injunctive relief are: (1) a transfer to the "P.C. (protective custody) unit" at St. Clair, which, according to Plaintiff, "is equivalent to general population housing in terms of rehabilitative, educational, vocational, and religious opportunities;" (2) a transfer to a prison in his home state of Florida where he could enter the general prison population; or (3) release back into society. (Doc. 4 at 11-12).  As discussed above, subsequent to the filing of this action, Plaintiff was transferred to St. Clair prison. (Doc. 8).  Therefore, his claims for injunctive relief related to his incarceration at Holman are moot.  Boglin v. Weaver, 2001 WL 228172, *9 (S.D. Ala. 2001) (unreported) ("[A]n inmate's request for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once an inmate has been transferred.") (citing Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1989)).

denying that they violated Plaintiff's constitutional rights and
asserting various defenses, including absolute and qualified
immunity.[8] (Docs. 28, 34).  On February 1, 2008, the Court
ordered that Defendants' Special Report and Answer be treated as
a Motion for Summary Judgment.  (Doc. 35).  On February 13, 2008,
Plaintiff filed a response in opposition to Defendants' Motion
for Summary Judgment.  (Doc. 36).  Defendants' Motion for Summary
Judgment and Plaintiff's opposition thereto are now before the
Court.

<u>III. SUMMARY JUDGMENT STANDARD</u>

In analyzing the propriety of a motion for summary judgment,

---

[8] Plaintiff is suing Defendants in both their official and
individual capacities.  As state officials, Defendants are
entitled to absolute immunity from suit for damages in their
official capacities.  <u>See</u> <u>Harbert Int'l, Inc. v. James</u>, 157 F.3d
1271, 1277 (11th Cir. 1998) (state officials sued in their
official capacities are protected from suit for damages under the
Eleventh Amendment).  Furthermore, "[q]ualified immunity protects
government officials performing discretionary functions from
suits in their individual capacities unless their conduct
violates 'clearly established statutory or constitutional rights
of which a reasonable person would have known.'"  <u>Dalrymple v.</u>
<u>Reno</u>, 334 F.3d 991, 994 (11th Cir. 2003) (quoting <u>Hope v. Pelzer</u>,
536 U.S. 730, 739 (2002)).  In determining whether qualified
immunity is appropriate in a given case, "[t]he court must first
ask the threshold question whether the facts alleged, taken in
the light most favorable to the plaintiffs, show that the
government official's conduct violated a constitutional right."
<u>Dalrymple</u>, 334 F.3d at 995 (citing <u>Saucier v. Katz</u>, 533 U.S. 194,
201 (2001)).  Having found herein that Plaintiff's allegations do
not establish a constitutional violation, "there is no necessity
for further inquiries concerning qualified immunity."  <u>Saucier</u>,
533 U.S. at 201.

the Court begins with these basic principles.  The <u>Federal Rules</u> <u>of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed.</u> <u>R. Civ. P.</u> 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

<u>Fed. R. Civ. P.</u> 56(e); <u>see also</u> <u>Celotex Corp.</u>, 477 U.S. at 325-27.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely

8

colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

### IV.  DISCUSSION

In this action, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation arising out of his prolonged incarceration in segregation at Holman prison.[9]  (Doc. 4 at 11).  The crux of Plaintiff's Complaint is that, with the exception of a period of one year and four months that he spent in the general population, the entire time that he was incarcerated at Holman prison, he was housed in segregation. (Id.).  The record shows that Plaintiff was incarcerated at Holman prison from July, 2001, to April, 2006, and, during that time, spent approximately three years and five months in segregation.  (Doc. 28, att. 2 and att. 3).

---

[9] The record shows that the vast majority of the time that Plaintiff was confined in segregation at Holman prison was spent in administrative segregation, with relatively short periods of time in disciplinary segregation.  (Doc. 28, att. 2 and att. 3). Plaintiff does not challenge his confinement in disciplinary segregation separately; rather, he merely references his "unending" confinement in administrative segregation.  (Doc. 4 at 8).

In his Complaint, Plaintiff alleges claims against Defendant Grantt Culliver, Warden of Holman prison, and Defendant Penny Emmons, Holman Unit Classification Specialist, for violating his due process rights under the Fourteenth Amendment, as well as his Eighth Amendment right to be free from cruel and unusual punishment, by housing him "indefinitely" in "administrative segregation." (Doc. 4 at 4, 7, 9, 11).  Plaintiff further claims that Defendant Judy Holloway, Classification Specialist Supervisor at Kilby Correctional Facility ("Kilby"), violated his Fourteenth Amendment due process rights by arbitrarily placing him in Holman prison in the first place.  (Id. at 7).

Section 1983 provides in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress. . . .

42 U.S.C. § 1983 (1994).  For each of the reasons set forth below, Plaintiff's § 1983 claims fail as a matter of law.

A. Statute of Limitations.

"In states where more than one statute of limitations exists, the forum state's general or residual personal injury statute of limitations applies to all § 1983 actions filed in

federal court in that state." <u>Burt v. Martin</u>, 193 Fed. Appx.
829, 830 (11th Cir. 2006).  In Alabama, that period is two years.
<u>Id.</u>  "A cause of action accrues for purposes of determining when
the statute of limitations period began to run when the plaintiff
knew or should have known of his injury and its cause."  <u>Id.</u>

Plaintiff alleges that Defendants violated his rights under
the Fourteenth and Eighth Amendments by confining him in
segregation at Holman on two prolonged occasions: (1) from July,
2001, to May, 2004 (after which he was released into the general
population for one year and four months); and (2) from September,
2005, to April, 2006 (when he was placed back in administrative
segregation until he was transferred to St. Clair).  (Doc. 4 at
11).  Plaintiff filed his Complaint in this action on March 1,
2006.  (Doc. 1).  Applying the two-year limitations period and
the applicable accrual rule, any claims related to Plaintiff's
incarceration in segregation prior to March 1, 2004, are time
barred.[10]  In any event, even if Plaintiff's § 1983 claims

---

[10] Plaintiff has not alleged exceptional circumstances that
might warrant equitable tolling of the limitations period.  <u>See</u>
<u>Rutledge v. Tew</u>, 2007 WL 1771385, *1 (M.D. Ala. 2007)
(plaintiff's untimely § 1983 claim dismissed where plaintiff
"fail[ed] to assert any exceptional circumstances which would
warrant equitable tolling of the limitation period.") (citing
<u>Sandvik v. United States</u>, 177 F.3d 1269, 1271 (11th Cir. 1999)
(federal limitations period may be equitably tolled when a
plaintiff untimely files because of "extraordinary circumstances
that are both beyond his control and unavoidable with
diligence."); <u>Arce v. Garcia</u>, 434 F.3d 1254, 1261 (11th Cir.
2006) (Plaintiff bears the burden of showing extraordinary
circumstances.)).

related to his incarceration prior to March 1, 2004, were not time barred, they still fail inasmuch as he has not established a violation of the Fourteenth or Eighth Amendment.

    B. Due Process.

        1. Liberty Interest.

    The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  Plaintiff does not claim to be deprived of life or property.  Therefore, he is only entitled to due process if he was deprived of a liberty interest within the meaning of the Fourteenth Amendment.

> The Supreme Court has stated that there are two circumstances in which a prisoner can be deprived of a liberty interest beyond the deprivation associated with the prisoner's confinement.  See Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995).  First, a liberty interest may arise from the "Due Process Clause of its own face," which extends procedural safeguards to a prisoner when his liberty is restrained in a way that exceeds the sentence imposed by the court.  Id.  Secondly, states may create liberty interests by conferring certain benefits to prisoners, the deprivation of which "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id.

Wallace v. Hamrick, 229 Fed. Appx. 827, 829-30 (11th Cir.  2007) (unpublished).

    The Supreme Court has held that there is no right inherent

in the Constitution to be free from confinement in disciplinary segregation. Sandin, 515 US. at 487, 478. Likewise, there is no right inherent in the Constitution to be free from confinement in administrative segregation. Al-Amin v. Donald, 165 Fed. Appx. 733, 738 (11th Cir. 2006). Therefore, Plaintiff possesses a liberty interest related to his confinement in administrative or disciplinary segregation at Holman prison only if the State has created such a liberty interest. Id. at 478. "'[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the *nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'*" Wallace, 229 Fed. Appx. at 830 (quoting Wilkinson v. Austin, 545 U.S. 209, 223 (2005), quoting Sandin, 515 U.S. at 484).

In Sandin, the Supreme Court compared the conditions of confinement in disciplinary segregation, administrative segregation, and the general population and found that a prisoner's thirty-day confinement in disciplinary segregation did not implicate a state-created liberty interest because it did not present an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id., 515 U.S. at 484. The plaintiff in Sandin was a convicted murderer and a kidnapper, sentenced to an indeterminate term of thirty years to life in a maximum security prison. Id. at 474-75.

Rejecting the plaintiff's argument that solitary confinement automatically triggered due process protection, the court noted that even inmates in the general population were confined to their cells for twelve to sixteen hours a day, depending upon their classification. Id., 515 U.S. at 486 and n.8. Therefore, the deprivations endured by the plaintiff in disciplinary segregation were not "atypical" or "significant" and "did not work a major disruption in his environment." Id., 515 U.S. at 486.

In the present action, Plaintiff's considerably longer confinement in administrative segregation presents an additional consideration not present in Sandin. Addressing that issue in Al-Amin, 165 Fed. Appx. at 739, the Eleventh Circuit held that a prisoner who had been convicted of murder and sentenced to life imprisonment without the possibility of parole did not have a state-created liberty interest in being free from confinement in administrative segregation for three years, which represented the entire amount of time that he had been incarcerated at the facility. The evidence showed that the inmate was classified as a "high maximum security" prisoner, who was considered an escape risk and a threat to the security of the prison. Id. at 735. Finding no state-created liberty interest, the Eleventh Circuit stated:

> Al-Amin has a liberty interest only if his
> confinement in GSP's administrative

14

> segregation for a period of approximately
> three years constitutes an "atypical and
> significant hardship" on him "in relation to
> the ordinary incidents of prison life."  Id.
> at 484, 115 S. Ct. at 2300.  Based on the
> substantial similarity between the privileges
> and conditions of life in the general
> population of GSP in comparison to conditions
> in administrative segregation, the district
> court concluded that confinement in
> administrative segregation did not constitute
> an atypical and significant hardship.  We agree.
> The briefs and the record establish that no
> genuine issue of material fact exists
> concerning the equivalence of the conditions
> of Al-Amin's administrative segregation
> confinement in comparison to the conditions
> experienced by the general population of GSP.
> Moreover, Al-Amin receives periodic reviews
> of his classification status in accordance
> with the Georgia Department of Corrections'
> Standard Operating Procedures.  Under these
> circumstances, Al-Amin's confinement in
> administrative segregation does not
> constitute an "atypical and significant
> hardship ... in relation to the ordinary
> incidents of prison life."  See id. at 484,
> 115 S. Ct. at 2300.

Al-Amin, 165 Fed. Appx. at 739.  In Al-Amin, the plaintiff was

housed in administrative segregation for approximately three

years in a single cell and allowed to leave only for five hours

of exercise a week and for showering and shaving three times a

week.  He could not go to the dining room with the general

population for meals.  He was allowed to have personal

possessions in his cell; his furnishings were similar to those in

the general population; and he was allowed the same visitation

and correspondence privileges as those in the general population.

He received periodic reviews of his classification status.[11]   <u>Id.</u>

Plaintiff alleges that the conditions of his confinement in segregation at Holman were vastly different from the conditions of confinement in the general population and, thus, implicate a liberty interest.  Plaintiff claims: (1) He was confined for approximately three years and five months[12] in a single cell, with the exception of approximately four hours per week when he was allowed to exercise and take showers; (2) his cell was hot in the summer and noisy; and (3) he was denied access to vocational, educational, and recreational activities (including television, movies, interactive games), and group activities (including religious services and sporting events).  (Doc. 4 at 10-11).

Applying the holdings of <u>Sandin</u> and <u>Al-Amin</u> to the facts

---

[11] Plaintiff in the present action does not allege any deprivations related to his personal possessions, furnishings, correspondence, or visitation.  As discussed herein, Plaintiff likewise received periodic reviews of his custody and classification status. (Doc. 28, att. 2 at 2-5).

[12] Plaintiff spent approximately two years and ten months in administrative segregation at Holman before being released to the general population for one year and four months.  He then returned to administrative segregation for another seven months before being transferred to St. Clair, where he is currently incarcerated.  (Doc. 28, att. 2; Doc. 8).  As discussed, *supra*, Plaintiff's claims related to his confinement prior to March, 2004 (approximately two years and eight months of the total time spent in administrative segregation), are time barred.  However, even considering the entire period of time that Plaintiff spent in administrative segregation at Holman (three years and five months), the result is the same.  As discussed herein, Plaintiff has failed to show that the conditions of his confinement in segregation at Holman constituted an atypical and significant hardship in relation to the ordinary incidents of prison life.

16

presented by Plaintiff's Complaint, the Court is convinced that
the restrictions and deprivations experienced by Plaintiff in
segregation at Holman prison did not impose an atypical and
significant hardship in relation to the ordinary incidents of
prison life.  Assuming, for purposes of this motion, that inmates
in the general population enjoyed all of the benefits denied
Plaintiff in segregation,[13] the Court finds that the deprivations
alleged by Plaintiff were still within the range of confinement
to be normally expected for one serving a sentence of life
imprisonment without the possibility of parole for capital murder
in a maximum security prison.  Plaintiff has not alleged that he
was denied adequate food, exercise, medical care, or sanitation,
nor has he alleged any other circumstance that, in the Court's
view, would constitute an atypical and significant hardship in
relation to the ordinary incidents of prison life.[14]  Therefore,

---

[13] Neither the State nor Plaintiff has provided the Court
with specific comparative information related to the restrictions
and benefits of confinement in the general population.
Therefore, for purposes of this motion, the Court assumes that
the restrictions alleged by Plaintiff related to his conditions
of confinement in segregation do not exist in the general
population and that the benefits he was denied in segregation are
enjoyed by inmates in the general population.

[14] The circumstances alleged in the present action are unlike
those alleged in Wallace, 229 Fed. Appx. at 830, in which the
Eleventh Circuit held that an inmate had sufficiently pled, for
purposes of avoiding dismissal under 28 U.S.C. § 1915A, a
Fourteenth Amendment state-created liberty interest and an Eighth
Amendment claim arising out of his incarceration in
administrative segregation for twenty-eight days where, in
addition to having no hot water and no ventilation, the inmate
alleged that he had no opportunity for exercise and did not

Plaintiff did not possess a liberty interest in being free from
the alleged conditions of his segregated confinement.

    2.  <u>No Violation</u>.

The foregoing notwithstanding, even if the Court were to
assume that Plaintiff had a protected liberty interest related to
his segregated confinement at Holman prison, his claims would
still fail inasmuch as his due process rights have been
fulfilled.  The record reflects that, while in segregated
confinement, Plaintiff received annual reviews of his custody
status and/or reclassification hearings in December 2001, June
2002, June 2003, June 2004, June 2005, and January 2006.  (Doc.
28, att. 2).  In addition, Plaintiff received hearings in
connection with each of the three disciplinary actions taken
against him while he was incarcerated at Holman.  (Doc. 28, att.
2 and att. 3).  Plaintiff does not allege that he was denied
advance notice of the hearings, the evidence relied upon, or the
reasons for the action taken, nor does he allege that he was
denied the opportunity to call witnesses, <u>see</u> <u>Madison v. Ferrell</u>,
2007 WL 3253659, *10 (S.D. Ala. 2007) (quoting <u>Wolff v.</u>
<u>McDonnell</u>, 418 U.S. 539, 563-66 (1974)), in connection with any
of the disciplinary proceedings.  Because Plaintiff received due
process in connection with his segregated confinement at Holman
prison, his claims fail as a matter of law for this reason as

_____

receive timely medical care.

well.

    C. Eighth Amendment.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.    It proscribes those conditions of confinement which "shock[] the conscience," involve the "wanton and unnecessary infliction of pain," or which are "grossly disproportionate to the severity of the crime warranting imprisonment." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Sheley v. Dugger, 833 F.2d 1420, 1429 (11th Cir. 1987). Only conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment." Rhodes, 452 U.S. 337, 347.

In the present action, Plaintiff alleges that: (1) he was confined in segregation for a total of three years and five months in a single cell and allowed to leave his cell for only four hours per week to exercise and take showers; (2) his cell was hot in the summer and noisy; and (3) he was denied access to vocational, educational, recreational, and group activities.

"It is clear that administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." Sheley, 833 F.2d at 1429 (citing Hutto v. Finney, 437 U.S. 678, 686 (1978)).  Because Plaintiff does not allege that he was deprived of adequate food, medical care, exercise, or sanitation, his conditions of confinement in

19

administrative segregation at Holman do not, on their face, violate the Eighth Amendment.

However, in deciding whether Plaintiff's confinement meets constitutional standards, the Court must also consider the length of Plaintiff's confinement, whether it poses a threat of "critical," or "possibly irreversible" psychological illness to Plaintiff, and whether there are feasible alternatives to his custodial arrangement. <u>Sheley</u>, 833 F.2d 1429-30. In addition, if Plaintiff's confinement in segregation is punitive in nature, the Court must consider "whether it shocks the conscience, is grossly disproportionate to the offense, or is totally without penological justification." <u>Sheley</u>, 833 F.2d at 1429.

In <u>Sheley</u>, the Eleventh Circuit held that an inmate's twelve-year confinement in segregation with only two hours of out-of-cell exercise per week raised "serious constitutional questions" given the alleged mental and physical deterioration of the inmate and the alleged punitive nature of the segregation. <u>Id.</u> The court remanded the case for an evidentiary hearing on the reasons for the segregation, the conditions of segregation, the effects of long-term confinement in those conditions, the psychological evaluations (if any) that the inmate had received, and the possibility of feasible alternatives.

In the present action, the reason for Plaintiff's confinement in segregation was, at times, the result of prison

20

management and, at other times, the result of disciplinary
action.  (Doc. 28, att. 2 and att. 3).   Plaintiff entered Holman
prison as an inmate who had been convicted of capital murder.
Prior to entering Holman, while incarcerated at Donaldson,
Plaintiff had established a long list of enemies throughout the
Alabama prison system with whom he could not safely be confined
in the general population.  In addition, while incarcerated at
St. Clair, Plaintiff had been disciplined for being in possession
of a prison made weapon.  (Doc. 28, att. 2 at 1;  Doc. 28, att. 3
at 23-24).  Upon entering Holman, Plaintiff repeatedly proved to
be a threat to prison security by making threats, assaulting DOC
employees on two different occasions, possessing an escape device
on two separate occasions, and possessing a prison made weapon on
two separate occasions.  (Doc. 28, att. 2 at 2-4; Doc. 28, att. 3
at 3, 9, 11).  Therefore, his prolonged segregation from the
general population (off and on for a total of three years and
five months) was warranted and necessary to maintain order and
security in the prison.

    With respect to the effect of Plaintiff's long-term
confinement on his mental health, Plaintiff alleges that it
exacerbated his mental health problems to the point that he
frequently considered suicide.  (Doc. 4 at 11).

> Although depression, hopelessness,
> frustration, and other such psychological
> states may well prove to be inevitable by
> products of lifelong incarceration, the

> threat of substantial serious and possibly
> irreversible if not critical psychological
> illness together with prolonged or indefinite
> segregated confinement would increase the
> burden on prison authorities to explore
> feasible alternative custodial arrangements.

Sheley, 833 F.2d at 1429 (quoting Jackson v. Meachum, 699 F.2d 578, 584-85 (1st Cir. 1983)).  In the present action, there is no medical evidence suggesting that Plaintiff suffered from the threat of "substantial serious and possibly irreversible if not critical psychological illness" as a result of his confinement in administrative segregation.   Id.  Plaintiff's unsubstantiated allegations are simply insufficient to establish this factor. Cf., U.S. v. Adam, 2007 WL 4115960, *12 (S.D. Fla. 2007)(rejecting Plaintiff's unsubstantiated claim that his mental condition was deteriorating in administrative segregation).

With respect to feasible alternatives to Plaintiff's confinement in segregation, the record shows that, after receiving regular reviews of his custody status, Plaintiff was released from administrative segregation after two years and ten months and placed in the general population for one year and four months.  (Doc. 28, att. 2 at 4).  Plaintiff returned to confinement in administrative segregation after assaulting a DOC employee, and he remained there for seven months before being transferred to St. Clair prison.  (Id.; Doc. 28, att. 3 at 11; Doc. 8).  During those seven months, prison officials discovered Plaintiff with an escape device and a prison made weapon.  (Doc.

22

28, att. 2 at 4).   Therefore, Plaintiff forfeited his alternative confinement in the general population and rendered that option unfeasible.

Having considered all of the circumstances related to Plaintiff's confinement in administrative and disciplinary segregation at Holman prison, in their entirety, Plaintiff's allegations fail to establish a deprivation rising to the level of cruel and unusual punishment.   "[T]he Constitution does not mandate comfortable prisons."   Rhodes, 452 U.S. at 349.   To the extent that the conditions endured by Plaintiff in segregation at Holman prison were "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."   Id., 452 U.S. at 347.   The circumstances of Plaintiff's segregated confinement do not shock the conscience, offend society's evolving notions of decency, nor are they grossly disproportionate to the offenses which he has committed. Sheley, 833 F.2d at 1428 (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)).   Accordingly, Plaintiff's Eighth Amendment claim fails as a matter of law.

## V.   CONCLUSION

Based on the foregoing, the Court concludes that Defendants Grantt Culliver, Penny Emmons, and Judy Holloway are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.   Accordingly, it is recommended that

23

Defendants' Motion for Summary Judgment be GRANTED, that this
action be DISMISSED with prejudice, and that judgment be entered
in favor of Defendants Culliver, Emmons, and Holloway and against
Plaintiff, Gary Wayne Searcy, on all claims.


MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.  Objection.  Any party who objects to this recommendation or
anything in it must, within ten days of the date of service of
this document, file specific written objections with the clerk of
court.  Failure to do so will bar a *de novo* determination by the
district judge of anything in the recommendation and will bar an
attack, on appeal, of the factual findings of the magistrate
judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d
736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404
(5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging
the findings and recommendations of the magistrate judge is set
out in more detail in SD ALA LR 72.4 (June 1, 1997), which
provides that:

> A party may object to a recommendation entered by a
> magistrate judge in a dispositive matter, that is, a matter
> excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement
> of Objection to Magistrate Judge's Recommendation" within
> ten days after being served with a copy of the
> recommendation, unless a different time is established by
> order.  The statement of objection shall specify those
> portions of the recommendation to which objection is made
> and the basis for the objection.  The objecting party shall
> submit to the district judge, at the time of filing the
> objection, a brief setting forth the party's arguments that
> the magistrate judge's recommendation should be reviewed *de
> novo* and a different disposition made.  It is insufficient
> to submit only a copy of the original brief submitted to the
> magistrate judge, although a copy of the original brief may
> be submitted or referred to and incorporated into the brief
> in support of the objection.  Failure to submit a brief in
> support of the objection may be deemed an abandonment of the
> objection.


A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment can

be appealed.

2.   <u>Transcript (applicable where proceedings tape recorded)</u>.
Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the
magistrate judge finds that the tapes and original records in
this action are adequate for purposes of review.  Any party
planning to object to this recommendation, but unable to pay the
fee for a transcript, is advised that a judicial determination
that transcription is necessary is required before the United
States will pay the cost of the transcript.

     DONE this 12th day of March, 2008.


                         <u>s/BERT W. MILLING, JR.      </u>
                         UNITED STATES MAGISTRATE JUDGE